Good morning your honor. May it please the court, counsel. I want to answer a question that you asked earlier today, Judge. The jury instructions in this case are wrong. Who are you? My name is Kim Trout. My apologies, your honor. I represent the city of McCall. You're Mr. Trout? No, I'm Mr. Trout and my partner David Crick is seated. Oh, Trout. Yes, sir. I'm sorry. No, no, that's fine. As I said, sir, the jury instructions in this case are wrong and it does make a difference. What happened in this case, your honor, was that unfortunately the district court found confusion in the concepts of substantial performance and substantial completion, voiced that confusion, and improperly mixed the instruction related to material breach, which is instruction three. Counsel, let me tell you where I am in this case. We don't confer before, so this may just be me and my colleagues may have entirely different thoughts, but I want you to deal with what's on my mind. I had trouble understanding the instructions and I'm sympathetic to your argument that there may be some errors in it. However, it looks as though they follow the Idaho form book, and when I looked at the record, the instructions conference that was on the record, it was hard to see exactly what was articulated so that the judge would understand what was wrong and what he ought to do about it, and it was also hard for me to see why any of it mattered. It was a long jury trial and it looked like what the jury was really focused on was whether the city was wrong to fire the contractor, and if it was, how much it cost the contractor in direct and consequential damages, and the details of the errors in these hard to understand instructions didn't matter. And that was my basic take after reading the briefs and excerpts, so that's bad for you. Educate me out of it. Let me take it from the top. First of all, I think the objections were the level of understanding that the parties were operating on during the course of the jury instruction conference. It was clear from the judge's statement that they'd had a number of jury instruction conferences prior to the one that went on the record, and I think when you analyze the objection that was made in the context of the briefing that was before the court, you will understand why the judge had an opportunity to make a different decision and chose not to make a different decision. What he said on the record was, and this is at tab 26 of the city, with regard to the question of substantial completion, substantial performance, I think we have handled that the best way we can because we have confusing terms used by Idaho law and the contract. And what's really important here is that substantial performance is not related to breach. And in fact, under the Ballew decision that we have cited to the court, substantial performance is simply related to a rule of damages. And we cite you to Ballew, and it says, quote, the doctrine is essentially a rule of damages allowing the breaching party to recover for benefits conferred on the other party, but reducing his recovery by any damages which his breach may have caused. Now, to understand how that fits in the context of Idaho law, what we have to do is we have to look at where they started. The theory of Ballew is actually... The way I remember it from law school, if you breach a contract, you can't recover on the contract, but you can recover for substantial performance. Law school is a Is that what you're saying Idaho law is? I believe that's a fair assessment. If you follow the line of cases that were before the court that we've cited, you'll get to the same point. The line of cases are as follows. We cited Euster v. Thompson, which is 126 Idaho 6. It says substantial performance is the antithesis of material breach. It, in effect, adopts the Ballew rule that says it is a rule of the measure of damage. In that case, they cite, and it's interesting that we have two cases that are important here, both of them written by the same judge, Chief Judge Walters of the Court of Appeals. The Thompson case and the Sullivan v. Bullock's case are the two critical cases for your consideration, and I invite you to review them again. In Thompson, the judge says effectively the same thing, that it is a rule of damages, and that citing Ervin construction, another case cited by my opponents, that the question is quantifying what that measure is. Why does it matter here? Why does it matter? Yeah, the way I remember the doctrine, the classic case was a contract to build a hotel in Boston, and the contract said what brand of doorknobs to use. The contractor used a different brand of doorknobs, so the outcome was the contractor cannot recover on the damages on the contract, but can recover substantial performance, which is the contract price, because the brand of doorknobs didn't matter. It matters because it changes the measure of damages. If you go to the next level of analysis, Judge Walters in the Thompson case cites Ervin, and then he goes on to quote Jacobs and Young v. Kent, which is the seminal decision from Justice Cardozo in 1921 regarding this issue, and what the justice says in his decision establishing the concept of substantial performance is that it's unrelated to the issue of breach, and the reason it matters here, Judge, is that in Instruction 3, the district court confused the jury by combining the question of material breach with a rule related to damages, and in the instruction that you submitted that would show them what to do. The instruction that we submitted? I don't believe we submitted an instruction on that. I think we objected, and I think the objection was clear in context, and the objection is clear in context when you go one step further, Judge, and that is if you will note in the early portion of the jury instruction conference, Mr. Blewett's associate, Mr. Halley, proffered four additional instructions based on a case called Sullivan v. Bullock. There was a colloquy between the court and Mr. Halley about that, and the court eventually rejected those four instructions, and I'll submit to this court that those were the most important instructions that could have been issued in the case because they went directly to a correct analysis of what material breach is, separate and apart from the issue of substantial performance, and, Judge, I'll answer one more question for you. Yes, they followed the IDG instructions, but you will not find a case, nor has our opponent cited a case to you in which material breach is combined with an instruction on substantial performance because they are in apples and oranges comparison. Counsel, I want to go for a second. Would you turn to the instruction that you think is in error and point to me precisely the sentence that is wrong and tell me why the district court got it wrong? Yes, sir. I assume that you're looking at instruction three? I am. Is it sentence two? It is. And the reason it's wrong is because it is incomplete. Because substantial performance is a measure of damages, not a measure as to whether there's been a material breach. That's correct. Correct. And more importantly, it's incomplete for another reason because it doesn't go on to discuss in terms that the jury can understand why it is that substantial performance has to be achieved before there can be a recovery. In other words, in this instance, there was evidence in the record before the court, and I'll cite you to St. Clair's tab seven and St. Clair's tab 11. Tab 11 is St. Clair's pay request number seven. If you carefully review the line items that occur in a construction contract and that were in this one, you will discover that at the time they submitted pay request number seven on December 6th of 2000, one month and four days after they were supposed to be complete with the project, they acknowledged that over $1.1 million worth of contract work had yet to be done. But I'm missing something here. The problem with the instructions is the sentence saying there is no material breach where substantial performance has been rendered. That's correct. Let's say that's wrong. There is a material breach regardless of whether substantial performance has been rendered. Substantial performance just goes to damage. Let's say we go with you on all that. Okay. Why did it matter here concretely and factfully on the evidence in this case? For two reasons. Number one, the court then asks to personalize the issue of substantial completion. Instead of asking the jury to determine on the flip side for the city of McCall whether or not St. Clair had substantially completed, in instruction 3A, what you see the judge saying is you have to determine, ladies and gentlemen of the jury, whether or not the engineer exercised reasonable judgment. Well, as we've cited in our briefing, whether or not the engineer exercised reasonable judgment wasn't the issue. The sole issue was whether or not St. I still don't understand why it mattered concretely in this case. I mean, let's say everything that you say was wrong was wrong. You've got good arguments for that. I still don't see why it matters because it looks like what the jury was deciding was, was the city wrong to fire the contractor when the contractor said they could perform by the extended performance date that they'd been given and that they wanted extra money for unanticipated problems? Or was the city justified in firing the contractor? It's wrong for two reasons. Number one, the failure of St. Clair to perform was based upon what's known as an impossibility standard. The judge gave an instruction on that. It's instruction number 5. And he said just because it's more difficult or burdensome doesn't mean that it's not impossible. That was a misstatement of Idaho law. Idaho law goes by the objective standard. Is it physically possible or not? The fact that it's more burdensome, more costly, or more expensive to perform doesn't make any difference. Then you go one step. I thought the issue was working through the winter. Well. But they had a June deadline and they said even not working through the winter they could still get it done by the June deadline. Well, but they had a November deadline. They had a November 2nd deadline according to the face of the contract. It did not get extended with respect to St. Clair. There was no extension granted. And that was an issue to be determined in the case. But the city was extended. The city was extended pursuant to the order of DEQ. But that's really not relevant to what we're talking about here. The question was whether or not St. Clair performed in time. And the reason it becomes very. If the city didn't give St. Clair an extension until June 1? They did not. They terminated instead. And so the question of wrongful termination was fair game. But the judge chose not to follow the line of authority that dealt with a wrongful termination case. That's the Sullivan v. Bollocks case that we quoted and that is referenced by Mr. Halley's comments in the jury instruction conference. And the reason that's so important is that's the corollary case that was decided by Chief Judge Walters. And the reason that's important is because where you have a wrongful termination case, you have a different measure of damage. You don't have all of the consequential loss. And, in fact, Judge Walters went on to cite Corbin on contracts that says where the full performance of the construction contract by the parties would have left the building contractor in possession of the full contract price less the entire cost of construction required by him. The problem with the judge's damage instruction in this case is he never asked the jury to determine how much St. Clair would not have spent by not having to complete. So we never got the correct measure of damage. And I would direct your attention to the fact that that measure has been adopted in Idaho law in the Sullivan v. Bollocks case and in a case called Molyneux at 54 Idaho 638. You'll see that's quoted in the Bollocks case at page 190 at the very bottom of the page. My point, gentlemen, and I'll reserve the rest of my time if I can, is that the jury instructions were wrong. They got the wrong decision with respect to how you measured material breach. The judge himself admitted it was confusion, and he elevated substantial performance as a statement of Idaho law. You'll see this in 3A over, or excuse me, in 3, over the terms of the contract calling for substantial completion. So material breach was wrong. Substantial performance was wrong. He gave the wrong instruction on substantial completion. He failed to use the one that was decided by the parties in the contract, and he gave the wrong measure of damage because he did not ask the jury to take into consideration how much money St. Clair would have saved by not having to do the work. Thank you, gentlemen. I'll reserve the balance of my time. Thank you, counsel. May it please the Court. I'm Ron Blewett for Appley-Wausau. We'd ask the Court to sustain the correct judgment of the district court in all respects. Do I need to tell the Court to split the time? That was my next statement, Your Honor. Yes, thank you, please. We've split our time half and half with St. Clair. Would the Court please 10 and 10? Thank you. Your Honor, we'd ask the Court to hold the city to the objections to the jury instructions, number one, that were issued at trial, and second, those jury instructions. First, we didn't... Could I back up to the first thing first? Yes, sir. I used to do these instruction conferences on the record, even though it was often hours of unstructured discussion, just to avoid this problem. Most judges do it off the record in chambers because it has to be unstructured discussion to really do it right. Yes, sir. I never know what to do in reviewing these things. I mean, I know perfectly well from when I was a lawyer that a lot of stuff happens in chambers, and it's clear to everybody what everybody else is talking about. So probably when the on-the-record discussion is first, we ought to cut them some slack. But maybe not. I don't know. There is a difference, Your Honor, between Appellant's argument and mine, in that I was at the jury instruction conference. The objections that were submitted on the record were the same objections with the same specificity that were submitted at the jury instruction conference. The objection at trial to Instructions 3 and 3A were, and look at the prejudice to us if we don't hold them to those objections. The objection that was submitted at trial as to Instructions 3 and 3A was, quote, substantial completion should be the language used throughout the instructions, close quote, in lieu of substantial performance. And that was it. And what the crux of the objection was by trial counsel for the city was that, wait a minute, St. Clair cannot have substantially performed their contract unless they substantially complete it. That was the crux of the objection at trial in front of trial counsel, that St. Clair could not have substantially performed unless they substantially complete it. And, in fact, that concept, that that was what the objection was, was mirrored by the district court in its memorandum decision denying the new trial motion. The district court saying, wait a minute, St. Clair could have substantially performed even if they didn't substantially complete it. The error alleged on appeal today is different than the error alleged on appeal at the time the opening brief was filed. The error alleged on appeal at the time the opening brief was filed was that the jury was encouraged to disregard contract term substantial completion in favor of the legal term substantial performance. The argument that you heard today, almost all of it, was not something that was asserted in the briefs. And the city should also be held to those briefs. In particular, there was no, for example, this is one example only, there was no objection at trial as to whether or not the instructions that Wausau proposed and Mr. Howley identified should have been submitted. That was not the city's objection at trial. I'm confused now. I just can't understand what we're supposed to do. We're looking at instructions 3 and 3A. Yes, sir. And tell me what the city told the district judge was wrong with them and why that doesn't matter. All right. That was in the excerpts of record, tab 26, page 217. What they said, what the city said at trial was wrong with them was that in lieu of substantial performance. That was it. The argument that the city made, and it was repeated in post-trial motions, was that St. Clair could not have substantially performed unless they substantially completed. That was the issue. The proposition in response was in 3 where it says there's no material breach where substantial performance has been rendered. They wanted that changed to there's no material breach where substantial completion hasn't been rendered? Has been rendered. Yes. That was it. What's wrong with that request? The problem with that request is that St. Clair could have substantially performed, and we articulated this throughout the brief. St. Clair could have substantially performed up to the date of wrongful termination. A minute to digress on that point. The issue presented was not just that they hit impossibility in the winter. The issue presented was that St. Clair had this much time. I'm holding my hands apart. St. Clair had this much time to do the job, okay? The contract authorized time extensions on the other end of the contract, beginning here and here. That contract authorized time extensions for what the overwhelming evidence showed was abnormally severe weather, unanticipated subsurface conditions, varied junkyards, extra work that was ordered by the city. And by the time you got down here on this end, then it was winter. And then impossibility kicked in as well. And I might add, the objection you heard today to impossibility instruction, there was no objection to an impossibility instruction. I think I understand what you're saying now. Let me rephrase it to you in my words, and you tell me if I've got it right. Yes, sir. The jury was correctly told they can't fire you if you're not in breach. They can fire you if you are in breach. Your case is they fired us early. Yes, sir. When we were not in breach. Their case is you would not you were in breach, and we want the jury to be told that if you had not substantially completed the project, you were in breach so we could fire you. You don't want the jury told that because you say we've still got months where we're allowed to complete the job, so substantial completion is irrelevant. All that matters is whether we've substantially performed thus far. We're not at our deadline yet. Absolutely. We got it? You got it, Your Honor. It was just a time question. You fired us early because we still had more time. Now, what about their argument that they just made they didn't fire you early. They got an extension, but they didn't give you one. Two different standards. Whether they got an extension or not, that was under the consent order, which was not incorporated. Those deadlines were not incorporated into the contract. All we sought were the time extensions within the contract. You wanted your contractual right to an extension because of the hidden problems,  Precisely, Your Honor. and had that time been granted, why we'd have been okay, but the city said no, no more time. And the record, we cited this in the brief, the engineer did not explain to the city that, wait a minute, these fellows may be entitled to more time because they hit different site conditions. Was the jury given instructions so that it could decide, no, the contractor just wasn't getting the job done, it wasn't just hidden hazards, or yes, the contractor's right, there were hidden hazards that prevented the contractor. Yes, that was. From getting it done and the contractor was entitled to an extension? Yes, that was the fundamental issue presented by both sides. We argued, hey, the contractor was entitled to more time. They argued, no, they weren't entitled to more time. They didn't get the job done. They didn't step up to the plate, and therefore, we were justified in terminating the contract. That was the issue presented at trial. And I might add that blue versus basic case, that Fourth Circuit case was brought up today in argument. In that case, huge, huge difference. Bear with me. Bear with me, and I'll back that up. Blue versus basic is a substantial completion case where it said the contractor failed to substantially complete, and therefore, he could not have substantially performed the contract. That was the crux of the case. But the difference in that case is that the contractor walked. He was gone. He took bankruptcy. Substantial completion and substantial performance, you would want to substitute substantial completion if it got to the time when you're supposed to complete. If it got to the time when, exactly, that was the issue. Was it the time when the contractor was supposed to complete? And even if it did get to that time, well, were we in the middle of winter? One last point on the damages, and I don't have to address this quickly as I'm running out of time, but the damages were spot on. If the court will look to instruction 7A, I believe it's at page 218 of the excerpts of record, that instruction identifies the elements of damages, and there was no double dipping in this damages, spot on, guarantee it, none. The instruction 7A items 2, 3, and 4 of instruction 7A, and I don't have time to go through them, but they do identify the elements of damages, which is nothing other than the remaining contract balance that was earned but unpaid. That's item 2. Item 3, may I summarize that briefly, Your Honor? Item 3 was the, I'm doing this from memory, item 3 was the cost for some extras. We've got them here. And there's no error in 7. Right. And there was no, St. Clair wasn't paid the whole cost for the project is what I'm saying without deducting out the expense that would have occurred for that cost. That's not accurate. We ask the court to affirm the judgment of the court in all respects. Thank you, Your Honor. Thank you. May it please the Court and counsel, Jeff McConnell on behalf of St. Clair Contractors. One point that came out in this morning's discussion that I think summarizes the case about as succinctly as you can, and that was this case was ultimately about a question of whether or not a contractor was wrongfully terminated. That is ultimately what the case came down to. There was factors that were put on by St. Clair as to why St. Clair wasn't able to complete the project within the time that it was originally supposed to. And then there was some contention by the city as to how, well, that just didn't really affect St. Clair. And the jury ultimately found that St. Clair Contractors was wrongfully terminated, had sufficient time to do work where it permitted to do so, and in addition incurred additional costs in the course of performing the work. The issue that I want to address that was raised in the briefs hasn't been discussed at all today, but I wanted to simply address it, was there's a contention that St. Clair's damages, the damages that St. Clair incurred as a result of the breach, were not proved with sufficient certainty. And I think that ultimately it comes from the argument that they weren't proved with reasonable certainty. Yes, Your Honor. There also was no instruction that they had to be proved with reasonable certainty. That's correct, Your Honor. There was no instruction that was given that had to be proven with reasonable certainty, nor was there a contention made during the jury instruction conference that such an instruction would and should be given. Nor is there an Idaho case that says such an instruction must be given. The issue is, in fact, if the Court were to look at Jury Instructions 7. You would argue that any error in not giving a reasonable certainty instruction is harmless because the damages were proved with reasonable certainty. Is that your argument? Absolutely. That's certainly one. And the other argument, it's a formulation issue. It doesn't go to any substantive law. The instruction that was given was correct rendition of Idaho law. The question is, well, did the judge abuse his discretion in not giving some additional instruction? The telling on that point is Jury Instruction 7, which is the jury instruction that pertains to the city's right to damages. The city was seeking compensatory damages. And in that instruction, there's no contention that the city need to have a jury finding, if you will, or some sort of a measure that it need be proven by reasonable certainty. The city said, well, that was a pattern instruction. It was good for the city. The city didn't object to St. Clair's instruction as well, that it need to be proved with reasonable certainty. The instruction itself, though, does say that the damages that flow must be those which will reasonably, I'm paraphrasing, but reasonably compensate the contractor for the expected losses at the time. And it's not an incorrect statement of the law. The issue then is- Incidentally, does Idaho law require that the damages be proved to a level of reasonable certainty? It's funny if it's not in the form, but it's the law. Yes, the law is pretty clear that, yes, damages need be proved with reasonable certainty. It's set forth in the Baumgartner case. It's set forth in a number of cases. But there's no requirement that the instruction itself use those words. And the pattern instruction that both parties used didn't use those specific words, but the pattern instruction does use the word that it must reasonably compensate the party for the expected damage. Here the instructions did not include the reasonable certainty, but the city made no objection to the instructions on that ground. That is correct, Your Honor. Has the court ever asked that the words must be proved to a reasonable certainty be added to the instruction? No, that was never a request that was made. Your argument here is that that issue is waived. Yes. It's not before the court. But the instruction would have also bound the jury had they gone for the city. Absolutely. Had the city, you know, the city was a potential awardee, if you will, and the city could have put it in its instruction, and it wasn't in the city's instruction as well. Yes, it would have necessarily also been a component part of the city's damages. They would have had to prove their damages with reasonable certainty, according to Idaho law. The then issue as well was a sufficient proof put on of the damages, and I think that there's an abundance of proof in the record, eight years of reviewed financial statements indicating the financial status of St. Clair contractors before and after the termination. And these were replete with things such as the costs of operations, the overhead costs, the gross revenues, and all put in without objection. Likewise, Mr. St. Clair testified to status of the company before and after, indicating that before the termination, the company had approximate value of about a million dollars of worth of that company. After the termination, that value dropped to approximately negative $100,000. It was more in debt than it had assets against it. In addition to the loss due to the fact that the company suffered when it couldn't get other work, it also did not receive lost profits which it otherwise would have been able to receive by virtue of being a contractor in the public sector. It didn't have that element. In fact, the records also indicate that it went from a gross revenues of maybe $4.5 to $5 million prior to the termination to about $1 million after the termination. The revenues get turned off right away. The overhead doesn't get turned off right away. The company eats into its reserves, goes into the hole, and then the last element is, okay, well, what were the lost expectations? What were your lost profits? And the operating losses are set forth in the years 2001 and 2002 financial statements. I think it's page 298 of the excerpt of record and page 342 going on memory as to what the operating losses were. And then in 2003, there was another document admitted without objection, and that was the draft balance sheet. It indicated that St. Clair made a slight profit. You combine the two operating losses with the slight profit, and you get to about $533,000 of profit loss. Combine the two, and you get to $1.6 million, roughly speaking. And if you look at the court's opinion, and that's on tab 16, in connection with the post-trial motions and the memorandum decision, on the court's opinion, again, I'm reading from the excerpt of record at page 165, the court says, well, at the conclusion of the jury trial, the jury awarded Wausau and St. Clair $4.9 million, finding that the city had committed a material breach of contract by terminating St. Clair. Of that amount, that's the $4.9 million amount, Of that amount, the jury found $1,629,203 constituted recovery for St. Clair's business devastation claim. I'm on page 2 of the memorandum decision, which is at page 165 of the excerpt of record. And it indicates there that the claim was comprised of just over $1 million for the devaluation of the company, resulting from the termination, and just over $500,000 for lost profits on public works projects foregone due to St. Clair's inability to get bonding due to the termination. I pointed out in the brief, and I'm not going to reiterate it here at length, but what I did try to point out in the brief is that by virtue of having the financial statements, there was a number of ways that the jury could have looked at this. The jury, as the court pointed out, looked at it in the way that it would appear they looked at it in the way that the court saw it as well. That is, you take the $1 million loss of value of the company, lost retained earnings, and add to that the lost profits of $500,000, and you get to about the $1.6 million figure that the jury got to. There were other ways that the jury could have used it. I put them out in the brief as to, well, you could put St. Clair back together again by taking the gross revenues of $4.5 million and saying, well, that shouldn't have stopped, because if you continued to work, you would have continued about that. You take the percent of contribution to overhead and profit, and that's at 18%. You deduct from that what they actually got, and that would put them up. My exercise got to an amount that was in excess of what the jury awarded. So to my mind, what I think is important here is that there was ample evidence for the court to, for the jury, to find that there was a loss that St. Clair Contractors was entitled to. There's one other thing that I did want to point out, and I'll be quickly done. I understand I only have 14 more seconds. But in the Baumgarten case, Idaho law in that case indicates that where there is damage, where there is a loss, just because the damages are difficult to prove is not excused, and we should not excuse the wrongdoer. Here, in this case, St. Clair Contractors clearly suffered a loss, and the Baumgartner case, I would submit, is the seminal decision that indicates, and if you look at Baumgartner, the disparity there was 20%, 30% between the estimates of what the damages were, and the court found that that was not speculative. That was not so difficult to graph that it resulted in speculation. I'm sorry for going over. Thank you, Your Honor. What I'd like to address are two issues. I'll take them in the reverse order of which they were presented. First of all, I think we have clearly identified in the briefing the excerpts of record and the statements that were made by Mr. St. Clair that theoretically support the damage claim. And I'll represent to you that the ---- Your Honor, you'd be right that substantial completion was irrelevant because they were entitled to an extension of time, so they didn't need to have substantially completed. It assumes that they were entitled to an extension of time. It doesn't assume it. It puts it to the jury whether they were. Well, the jury was never asked to answer that question. They were never asked was substantial completion afforded to the city. They were never asked ---- I don't know about that. We're supposed to try to indulge the verdict and reconcile the verdict with the instructions if we can. And I think I can read these instructions to mean that the jury was asked to determine whether the contractor had breached the contract. One part of the contract that the parties put to the jury in the clearest way was the entitlement of the contractor to extensions in some circumstances or the non-entitlement of the contractor to extensions. So it seems like it was put to the jury. Well, I'll answer it this way by reference to the record, Judge. If you look at tab 7 of the St. Clair record, that is their claim. Tab 7 is the nature of their claim. And what they've complained about in their briefing, what they complained about in the course of this case was that the imposition or the unexpected finding of this dump was the cause of all of their problems and the requirement that they go extend into the winter. Now, remember, this was 170 days for completion. In tab 7, they also tell you that their average rate of excavation and embankment per day is 10,800 cubic yards. Why couldn't it go either way? The jury decides the dump was the cause of the problem and entitled them to an extension or not. Because here's the problem, okay? What they say in tab 7 is the dump cost them 11 days. It cost them 11 days. And what the fact is is if you add up the total number of cubic yards, 600,000 cubic yards, divide that by the 10,800, you can see that they were supposed to do the excavation and embankment in 58 days out of 170. Pardon? That sounds like a jury argument, a good jury argument, but not an appellate argument. Well, the answer really goes back to Justice Cardozo's decision, and that is should the judge, should the district court, have taken away that from St. Clair as a matter of law? The answer is yes, he should have. There was no substantial performance because the city never received the benefit that it bargained for, and that was an operational completed holding storage structure plus the pumping facilities. And tab 11 answers the rest of the question. There was $1.1 million. You're saying that the judge should have gone through all this stuff about the manhole covers and the south dump and all that and instructed the jury that, as a matter of law, he's already determined that these did not cause delays that would entitle the contractor to an extension? I'm not saying that. What the judge focused on in his memorandum decision, Judge, was two things. Number one, the undiscovered dump and weather. Well, the weather didn't occur until way late in the project, more than a month after they were supposed to have completed. My point is, very simply, the judge missed the boat with respect to the law. He did not listen to either party, either Mr. Howley on behalf of Wausau or counsel for the city, and he didn't adopt the standard of the Bullocks case, which basically says, if you got terminated and if they're wrong, you get to be paid for your work that you did, but you have to give a credit back in the damage calculations for the money that you didn't spend. And I defy counsel or anyone else to look in Instruction 7A and find out where the jury was supposed to analyze and give that credit. That's what's wrong with both the liability and the damages side of this case. That's why the city was prejudiced. You can't segregate the verdict, and the reason is it was tainted because you have a bad instruction on material breach. You have a mixing with the rule of damages in the instruction on material breach. And so under the holding of Your Honor in White v. Ford, the instructions were not clear. They were confusing. It tainted the entire process. And I'll agree in front of a jury with the proper instructions, all of this is fair game. But in this situation with the instructions that were given that were wrong, it was unfair to the city, and they were prejudiced. Thank you for your time. Employers Insurance and St. Clair v. City of McCall as submitted were adjourned for the day.
judges: Thompson, Kleinfeld, Bybee